UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WEBBAPPS, L.L.C., D/B/A HITPATH,**<br>               **Plaintiff,**<br>**VERSUS**<br><br>**ACCELERIZE NEW MEDIA, INC., D/B/A CAKE MARKETING AFFILIATEWISE, L.L.C., MOORE INTERNATIONAL, L.L.C., PAB67 MEDIA, L.L.C.,  RYAN MOORE, CHRIS KAUTZ-SCANAVY, AND AARON HARPER**<br>               **Defendants.** | **CIVIL ACTION NO.**<br><br>**SECTION:**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE** |

### COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff WebApps, L.L.C. ("WebApps") brings this action for damages and injunctive relief against Defendants, Accelerize New Media, Inc., d/b/a Cake Marketing ("Cake Marketing"), AffiliateWise, L.L.C. ("AffiliateWise"), Moore International, L.L.C. ("Moore"), PAB67 Media, L.L.C. ("PAB67"), Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper and alleges as follows:

### SUMMARY OF ACTION

1.      WebApps is in the business of developing, promoting, advertising, marketing, and licensing HitPath® Software and competes directly with Cake Marketing in the licensing of performance marketing tracking software solutions.  Rather than compete on the merits, Cake Marketing recently resorted to misappropriating trade secrets developed by WebApps by accessing, copying, and downloading proprietary information from secure password-protected websites operating HitPath® Software ("HitPath® Software Platforms"), without authorization

or consent on at least 24 occasions between January 1, 2011 and March 31, 2011.  Cake Marketing was aided and abetted in its efforts by AffiliateWise, Moore, PAB67, Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper who knowingly and in bad faith provided or directed other to provide Cake Marketing with log in credentials for HitPath® Software Platforms.  The trade secrets misappropriated by Cake Marketing have enabled Cake Marketing to enhance the functionality of its own software products, to avoid incurring the substantial costs and expenses associated with software development, and to obtain other competitive advantages which would not have been available to Cake Marketing had it not engaged in theft.  This egregious conduct has caused and continues to cause irreparable injury to WebApps and violates federal and state statutory laws.

## PARTIES

2. Plaintiff, WebApps, is a Louisiana limited liability company which maintains its principal place of business in New Orleans, Louisiana.

3. Defendant, Cake Marketing, is a California corporation which maintains its principal place of business in Newport Beach, California.

4. Defendant, Affiliatewise, is a Tennessee limited liability company which maintains its principal place of business in Murfreesboro, Tennessee.

5. Defendant, Moore, is a Texas limited liability company which maintains its principal place of business in Southlake, Texas.

6. Defendant, PAB67, is a Virginia limited liability company which maintains its principal place of business in Glenn Allen, Virginia.

7. Defendant, Ryan Moore, is an individual of the age of majority who is domiciled in the State of Texas.  Ryan Moore is a principal and execute officer of Moore and at all times

exercised supervisory authority over Moore and knowingly, intentionally, and in bad faith directed Moore to undertake the actions alleged below for his own financial interest.

8.  Defendant, Chris Kautz-Scanavy, is an individual of the age of majority who is domiciled in the State of Virginia.  Chris Kautz-Scanavy is a principal and execute officer of PAB67 and at all times exercised supervisory authority over PAB67 and knowingly, intentionally, and in bad faith directed PAB67 to undertake the actions alleged below for his own financial interest.

9.  Defendant, Aaron Harper, is an individual of the age of majority who is domiciled in the State of Tennessee.  Aaron Harper is a principal and execute officer of AffiliateWise and at all times exercised supervisory authority over AffiliateWise and knowingly, intentionally, and in bad faith directed AffiliateWise to undertake the actions alleged below for his own financial interest.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction

10.  The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), as there is complete diversity of citizenship among the Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court also has subject matter jurisdiction over the federal statutory claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  In addition, this Court has subject matter jurisdiction over claims for violation of state law pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction), because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

**Personal Jurisdiction**

11. This Court has personal jurisdiction over each Defendant because each Defendant engaged in tortious conduct and caused injury in Louisiana by misappropriating trade secrets and proprietary information developed and owned by WebApps, a company organized under the laws of Louisiana and headquartered in Louisiana. Further, each Defendant engages in widespread and systematic commercial activities in Louisiana by marketing in Louisiana over the Internet and soliciting and contracting with customers and vendors in Louisiana. Finally, AffiliateWise, Moore, and PAB67 agreed to a dispute resolution clause requiring that any action based upon or arising out of their agreements with WebApps be resolved in New Orleans, Louisiana.

**Venue**

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) as this is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiff's claims occurred and Defendants are subject to personal jurisdiction in this state.

13. Venue is also proper because Defendants direct commercial activity to residents of Louisiana, including residents of this district. Defendants intend to, and will continue to, market, advertise, and sell to residents their respective products in this district.

**FACTUAL ALLEGATIONS**

14. WebApps licenses HitPath® Software to affiliate marketing networks (also called performance marketing networks), that use the software to track the performance of online marketing campaigns. Affiliate marketing is a revenue sharing arrangement between online merchants and affiliates. Affiliates operate websites that direct customer traffic to merchants in

exchange for commissions based on the clicks, leads, and sales generated by them. Affiliate marketing networks help merchants and affiliates manage and grow their businesses by pooling affiliates and tracking and reporting on data related to the merchant and affiliate marketing campaigns, including, without limitation, customer traffic, sales, and revenue data. HitPath® Software is the leading software solution for affiliate performance marketing networks and generates millions of dollars a year in annual revenue for WebApps.

15. HitPath® Software permits businesses that operate affiliate marketing networks to operate and manage their businesses efficiently and effectively on a password-protected websites hosted by WebApps. These websites are commonly referred to as HitPath® Software Platforms. HitPath® Software Platforms are divided into two segments. The first segment, the Affiliate Panel User Interface, permits affiliates who are part of a network to view and download marketing campaigns and view performance data. These affiliates access the Affiliate Panel User Interface with log in information provided by the network operator. The second segment, the Administrative Panel User Interface, is accessible only by the network operator and is used by the network operator to manage its network. The Administrative Panel User Interface represents the heart and brain of HitPath® Software and contains a host of network management features unavailable on other software platforms as well as valuable proprietary information about the architecture, html coding, databases, and customers unique to HitPath® Software.

16. WebApps has invested hundreds of thousands of dollars and thousands of hours of development time developing HitPath® Software. Additionally, many of the features of HitPath® Software are unique to WebApps and provide WebApps with a significant competitive advantage in the marketplace. WebApps protects its competitive advantage by strictly limiting access to the HitPath® Software Platform to authorized users and by restricting access to the

Administrative Panel User Interface to licensees who execute agreements contractually obligating themselves to maintain the confidentiality of HitPath® Software and to not copy, reverse engineer, or disassemble the software or permit or enable others to do so. These agreements also permit WebApps to seek injunctive relief to stop unauthorized disclosures of its software.

17. AffiliateWise, Moore, and PAB67 are current or former licensees of HitPath® Software. In connection with their licensing of HitPath® Software, AffiliateWise, Moore, and PAB67 executed written licensing agreements which specifically prohibited them from providing access to confidential portions of the software to third parties and obligated them to indemnify WebApps for any damages caused by any third party gaining access to the software through them. The license agreements further specifically prohibited AffiliateWise, Moore, and PAB67 from renting, leasing, transferring, reverse engineering, or disassembling HitPath® Software.

18. Beginning in or about January 2011, Cake Marketing entered into agreements with AffiliateWise, Moore, and PAB67 under which AffiliateWise, Moore, and PAB67 agreed to terminate their licensing agreements with WebApps and transfer their business to Cake Marketing. In connection with these agreements, Cake Marketing solicited log in credentials and passwords utilized by AffiliateWise, Moore, and PAB67 to access the Administrative Panel User Interface of their respective HitPath® Software Platforms. Although specifically prohibited by their licensing agreements from doing so, AffiliateWise, Moore, and PAB67 disclosed their log in credentials and passwords to Cake Marketing and knowingly and in bad faith rendered other assistance to Cake Marketing to aid and abet Cake Marketing in its efforts to access the Administrative Panel User Interface of the HitPath® Software Platforms.

19. Between January 21, 2011 and March 17, 2011, Cake Marketing unlawfully and without authorization accessed the Administrative Panel User Interface of the HitPath® Software Platforms established for AffiliateWise, Moore, and PAB67 on at least twenty-three occasions from IP address 173.196.140.70 and on at least one occasion from IP address 108.80.23.19.

20. On four of these occasions, Cake Marketing accessed the Administrative Panel User Interface of the HitPath® Software Platform established for AffiliateWise. In accessing the interface, Cake Marketing utilized log in credentials and passwords created by AffiliateWise for the specific purpose of providing Cake Marketing with independent access to HitPath® Software. The log in credentials created by AffiliateWise included a fictitious user log in name "Cake 2011" which was cross-referenced to an email address of andy@cakemarketing.com.

21. On six occasions, Cake Marketing accessed the Administrative Panel User Interface of the HitPath® Software Platform established for PAB67. In accessing the interface, Cake Marketing utilized log in credentials and passwords provided by PAB67 for the specific purpose of providing Cake Marketing with independent access to HitPath® Software. However, unlike AffiliateWise, PAB67 did not create a fictitious user log in for Cake Marketing, but rather provided Cake Marketing with the log in credentials for one of its existing employees.

22. On fourteen occasions, Cake Marketing accessed the Administrative Panel User Interface of the HitPath® Software Platform established for Moore. In accessing the interface, Cake Marketing utilized log in credentials and passwords created by Moore for the specific purpose of providing Cake Marketing with independent access to HitPath® Software. The log in credentials included a fictitious user log in name "Dan Shanker" and initials "CAK."

23. Cake Marketing made more than 47,000 page requests over the course of its incursions into HitPath® Software and transmitted, downloaded, and copied tens of thousands of

bites of information and images from HitPath® Software.  The information and images stolen by Cake Marketing included software architecture and features, HTML coding, customer information, and statistical data and information.  These aspects of HitPath® Software are unique to WebApps, are not known or accessible by anyone other than authorized users, and were developed at significant cost and expense.  These unique aspects also have significant monetary value to competitors who could utilize the information to enhance the functionality of their own software, to avoid incurring the substantial costs and expenses associated with software development, and to obtain other competitive advantages which otherwise would not be available to them.

24. To copy such a large volume of data, Cake Marketing utilized manual and automated copying techniques. The automated copying techniques included the use of "scraping programs" designed to extract, collect, and copy information.  These programs imposed such a significant burden on WebApps' servers that, on several occasions, they delayed and disrupted access to HitPath® Software for legitimate authorized users of HitPath® Software.  This disruption in service to customers damaged WebApps by harming its business reputation.

25. Cake Marketing has utilized the trade secrets and other proprietary information it has misappropriated from WebApps to enhance the functionality of its own software products and to avoid incurring the substantial costs and expenses associated with software development Cake Marketing also is using customer lists and data misappropriated from the HitPath® Software Platform to identify and contact prospective customers.  By way of example, Cake Marketing is actively informing and touting to prospective customers that Cake Marketing has developed automated tools to extract data from HitPath® Software and that it has functionality that is equivalent to or better than WebApps.  Cake Marketing also is using part of the savings on

development costs arising from its theft to subsidize price cuts in its software services to lure customers away from WebApps. This conduct has caused existing WebApps customers to leave WebApps and prospective customers to select Cake Marketing over WebApps. The loss of a single customer can result in revenue losses exceeding $100,000 over the course of a contract.

### COUNT ONE – COMPUTER FRAUD AND ABUSE

26. The HitPath® Software Platforms are used in interstate and foreign commerce and communication and constitute an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and, alternatively, represents a data storage facility and communications facility directly related to and operating in conjunction with an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions.

27. Between January 2011 and March 2011, Cake Marketing, with the aid and assistance of AffiliateWise, Moore, PAB67, Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper, knowingly and with the intent to defraud unlawfully accessed HitPath® Software Platforms without authorization through fraudulent log in credentials and passwords for the purpose of misappropriating trade secrets and other valuable proprietary information and, in fact, misappropriated trade secrets and other valuable proprietary information, for their own commercial gain. This conduct caused, and continues to cause, injury and damage to WebApps in the form of lost profits, damage to reputation, and diminished business valuation and good will in an amount to be proven at trial but which is estimated to exceed one million dollars ($1,000,000).

28. The conduct described above constitutes violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The threat of continuing unauthorized accesses and

misappropriation has caused, and will continue to cause, WebApps to suffer irreparable injury. WebApps seeks and demands relief against all defendants in the form of injunctive relief, economic damages, and for such other equitable and declaratory relief the Court deems just.

### COUNT TWO – UNLAWFUL ACCESS TO ELECTRONIC COMMUNICATIONS

29. The HitPath® Software Platforms are used in interstate and foreign commerce and constitute facilities through which an electronic communication service is provided.

30. Between January 2011 and March 2011, Cake Marketing, with the aid and assistance of AffiliateWise, Moore, PAB67, Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper, knowingly, maliciously, intentionally, willfully, and for purposes of their own commercial advantage and private commercial gain accessed HitPath® Software Platforms without authorization and thereby obtained access to the electronic communications stored on the HitPath® Software Platforms and disrupted, altered, and prevented authorized access to the HitPath® Software Platforms. This conduct caused, and continues to cause, injury and damage to WebApps in the form of lost profits, damage to reputation, and diminished business valuation and good will in an amount to be proven at trial but which is estimated to exceed one million dollars ($1,000,000).

31. The conduct described above constitutes violations of the Stored Wire and Electronic Communications and Transactional Act, 18 U.S.C. § 2701 *et. seq.*, and the threat of continuing unauthorized access to and disruptions, alterations, and preventions of authorized access to stored electronic communications has caused, and will continue to cause, WebApps to suffer irreparable injury. WebApps seeks and demands relief against all defendants in the form of injunctive relief, actual damages, disgorgement of profits, punitive damages, attorneys' fees, and costs, and for such other equitable and declaratory relief the Court deems just.

## COUNT THREE--MISAPPROPRIATION OF TRADE SECRETS

32.     As described above, the software architecture and features, HTML coding, customer information, and statistical data and other proprietary information on the HitPath® Software Platforms are trade secrets in that they derive independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

33.     Between January 2011 and March 2011, Cake Marketing, with the aid and assistance of AffiliateWise, Moore, PAB67, Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper, knowingly accessed the HitPath® Software Platforms with the specific intent and purpose of misappropriating trade secrets from WebApps and, in fact, misappropriated such trade secrets and has utilized those trade secrets for its own pecuniary gain and competitive advantage.  This conduct caused, and continues to cause, injury and damage to WebApps in the form of lost profits, damage to reputation, and diminished business valuation and good will in an amount to be proven at trial but which is estimated to exceed one million dollars ($1,000,000).

34.     The conduct described above constitutes violations of the Louisiana Unfair Trade Secrets Act, La. R.S. § 51:1431 et. seq., and the threat of continuing misappropriations has caused, and will continue to cause, WebApps to suffer irreparable injury. Alternatively, WebApps alleges that such conduct constitutes a violation of the statutory or common law equivalent to the Louisiana Unfair Trade Secrets Act under the law of any state determined by the Court to apply to the facts of this case based on conflicts of law principles.  WebApps seeks and demands relief against all defendants in the form of injunctive relief, damages, attorneys' fees, and costs, and for such other equitable and declaratory relief the Court deems just.

**COUNT FOUR—UNFAIR TRADE PRACTICES**

35. The conduct described above constitutes unfair trade methods of competition and unfair and deceptive acts and practices in that they offend established public policy, are unethical, oppressive, unscrupulous, and substantially injurious, and, therefore, violate the Louisiana Unfair Trade & Consumer Protection Law, La. R. S. § 51:1401 *et seq.* This conduct caused, and continues to cause, injury and damage to WebApps in the form of lost profits, damage to reputation, and diminished business valuation and good will in an amount to be proven at trial but which is estimated to exceed one million dollars ($1,000,000). Further, the threat of continuing unfair trade practices has caused, and will continue to cause, WebApps to suffer irreparable injury. WebApps seeks and demands relief against all defendants in the form of injunctive relief, damages, attorneys' fees, and costs, and for such other equitable and declaratory relief the Court deems just. Alternatively, WebApps alleges that such conduct constitutes a violation of the statutory or common law equivalent to the Louisiana Unfair Trade Practices Law under the law of any state determined by the Court to apply to the facts of this case based on applicable conflicts of law principles.

**COUNT FIVE—TORTIOUS CONDUCT**

36. The conduct described above constitutes intentional or, alternatively, negligent tortious conduct and caused, and continues to cause, injury and damage to WebApps in the form of lost profits, damage to reputation, and diminished business valuation and good will in an amount to be proven at trial but which is estimated to exceed one million dollars ($1,000,000). Further, the threat of continuing intentional or, alternatively, negligent tortious conduct has caused, and will continue to cause, WebApps to suffer irreparable injury. WebApps seeks and demands relief against all defendants in the form of injunctive relief, damages, foreseeable or

not, and for such other equitable and declaratory relief the Court deems just pursuant to Article 2315 of the Louisiana Civil Code. Alternatively, WebApps alleges that such conduct constitutes a violation of the statutory or common law equivalent to Article 2315 of Louisiana Civil Code under the law of any state determined by the Court to apply to the facts of this case based on conflicts of law principles.

### COUNT SIX – BREACH OF CONTRACT

37. AffiliateWise, Moore, and PAB67 knowingly, willfully, and in bad faith breached the terms of their respective license agreements with WebApps by aiding and abetting Cake Marketing in its efforts to access and misappropriate trade secrets from their respective HitPath® Software Platforms. AffiliateWise, Moore, and PAB67 further owe WebApps an obligation to indemnify WebApps for all losses and injuries sustained by WebApps arising from their decision to provide Cake Marketing with access to their respective HitPath® Software Platforms.

38. This conduct has caused, and continues to cause, WebApps to suffer substantial injuries, loss, and damage to its proprietary and exclusive rights to and in HitPath and, further, has diverted its trade and caused lost profits, all in an amount not yet ascertained.

39. This conduct, and the threat of continuing breaches of the Licensing Agreements has caused, and will continue to cause, WebApps to suffer repeated and irreparable injury including, but not limited to, the loss of revenue, monies paid, and loss of goodwill. WebApps seeks and demands relief against AffiliateWise, Moore, and PAB67 in the form of injunctive relief, damages, foreseeable or not, and for such other equitable and declaratory relief the Court deems just pursuant to Articles 1995 and 1997 of Louisiana Civil Code.

### COUNT SEVEN—INTENTIONAL INTERFERENCE

40. Cake Marketing, Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper at all times had knowledge of the terms of the agreements between WebApps and AffiliateWise, Moore, and PAB67 and intentionally and in bad faith caused and directed AffiliateWise, Moore, and PAB67 to breach their obligations to WebApps by aiding and abetting Cake Marketing in its efforts to access and misappropriate trade secrets from the HitPath® Software Platforms. The conduct described above constitutes intentional interference with contract and intentional interference with business relations and caused, and continues to cause, injury and damage to WebApps in the form of lost profits, damage to reputation, and diminished business valuation and good will in an amount to be proven at trial but which is estimated to exceed one million dollars ($1,000,000). Further, the threat of continuing and ongoing interference with contracts and business relations has caused, and will continue to cause, WebApps to suffer irreparable injury. WebApps seeks and demands relief against all defendants in the form of injunctive relief, damages, and for such other equitable and declaratory relief the Court deems just pursuant to Article 2315 of the Louisiana Civil Code. Alternatively, WebApps alleges that such conduct constitutes a violation of the statutory or common law equivalent to Article 2315 of Louisiana Civil Code under the law of any state determined by the Court to apply to the facts of this case based on conflicts of law principles.

### COUNT EIGHT—INJUNCTIVE RELIEF

41. The license agreements between AffiliateWise, Moore, and PAB67 and WebApps provide that claims and disputes arising out of the agreements will be submitted to arbitration, but reserve the right of WebApps to seek injunctive relief in the courts. WebApps submits that it would be more efficient for the parties to resolve all claims and disputes in a single judicial

proceeding. However, in the event that AffiliateWise, Moore, or PAB67 seeks to invoke arbitration, WebApps alternatively limits its claims against AffiliateWise, Moore, or PAB67 in this proceeding to injunctive relief and will submit all claims for damages against AffiliateWise, Moore, or PAB67 to arbitration. In the event its claims against AffiliateWise, Moore, or PAB67 are limited to injunctive relief, WebApps maintains and intends to prosecute all claims and causes of action for damages and injunctive relief against Cake Marketing Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, WebApps prays for the following relief:

1) Entry of a preliminary injunction enjoining Cake Marketing, AffiliateWise, Moore, and PAB67, and their agents, servants, employees, independent contractors and all persons acting with them, from: (a) disclosing, revealing, divulging, sharing, distributing, renting, leasing, transferring, or providing direct or indirect access to the Administrative Panel User Interface of HitPath® Software, or any information thereon, to any other business entity or person; (b) modifying, translating, reverse engineering, disassembling, imitating, copying, circulating, importing, producing, or creating derivative works based on HitPath® Software; (c) engaging in any other activities constituting the misappropriation of any of WebApps' trade secrets or proprietary confidential information; (d) assisting, aiding, or abetting any other business entity or person in engaging in or performing any of the activities referred to in paragraphs (a) through (c) above; and (e) ordering the disgorgement of all documents, data, applications, software, and other devices based upon or copied, derived,

translated, modified, imitated, or imported from HitPath® Software or any trade secrets or other information misappropriated from WebApps.

2) After due proceedings had, entry of a permanent injunction, an award of damages, actual, compensatory, and punitive and other such damages as provided by applicable statute, including attorneys fees and costs.

Respectfully submitted,

*/s/ Mark A. Cunningham*
MARK A. CUNNINGHAM (#24063)
BRETT S. VENN (#32954)
Jones, Walker, Waechter,
  Poitevent, Carrère & Denègre, L.L.P.
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8000
Facsimile: (504) 582-8583
mcunningham@joneswalker.com
bvenn@joneswalker.com