UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

WEBAPPS, L.L.C., d/b/a HITPATH                                CIVIL ACTION

VERSUS                                                        NO.  11-780

ACCELERIZE NEW MEDIA, INC.                                    SECTION  "N"  (4)
  d/b/a CAKE MARKETING, ET AL.

## ORDER AND REASONS

Presently before the Court are a number of motions to dismiss filed by both Plaintiff and Defendants pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (Rec. Docs. 24, 26, 54 and 55).  As stated herein, **IT IS ORDERED** that each of the motions are **GRANTED IN PART** and **DENIED IN PART**.  In ruling upon the motions, the Court has also ordered that various amendments be made to the original complaint and the counterclaims.  Thus, no later than fifteen (15) days from the entry of this Order and Reasons, an amending <u>and</u> superseding complaint and amending and superseding counterclaims remedying the pleading deficiencies identified herein are to be filed.  The amending and superseding pleadings must include all of the allegations from the original complaint or counterclaims on which the pleading party continues to rely, as well as its additional allegations.  If any amendments required by the Court are not timely made, the claim or counterclaim at issue shall be subject to dismissal with prejudice.

## BACKGROUND

As stated in its complaint, Plaintiff WebApps, L.L.C. d/b/a HitPath summarizes its

contentions of wrongdoing by Defendants as follows:

> WebApps is in the business of developing, promoting, advertising, marketing, and licensing HitPath® Software and competes directly with Cake Marketing[1] in the licensing of performance marketing tracking software solutions.  According to Plaintiff, rather than compete on the merits, Cake Marketing recently resorted to misappropriating trade secrets developed by WebApps by accessing, copying, and downloading proprietary information from secure password-protected websites operating HitPath® Software ("HitPath® Software Platforms"), without authorization or consent on at least 24 occasions between January 1, 2011 and March 31, 2011. Cake Marketing was aided and abetted in its efforts by AffiliateWise, Moore, PAB67, Ryan Moore, Chris Kautz-Scanavy, and Aaron Harper who knowingly and in bad faith provided or directed other to provide Cake Marketing with log in credentials for HitPath® Software Platforms. The trade secrets misappropriated by Cake Marketing have enabled Cake Marketing to enhance the functionality of its own software products, to avoid incurring the substantial costs and expenses associated with software development, and to obtain other competitive advantages which would  not have been available to Cake Marketing had it not engaged in theft. This egregious conduct has caused and continues to cause irreparable injury to WebApps and violates federal and state statutory laws.[2]

 In paragraph 24 of its complaint, WebApps adds:

> To copy such a large volume of data, Cake Marketing utilized manual and automated copying techniques. The automated copying techniques included the use of "scraping programs" designed to extract, collect, and copy information. These programs imposed such a significant burden on WebApps' servers that, on several occasions, they delayed and disrupted access to HitPath® Software for legitimate authorized users of HitPath® Software. This disruption in

---

[1]        All references herein to Defendant "Cake Marketing" concern Defendant Accelerize New Media, Inc., d/b/a Cake Marketing.

[2]        *See* Complaint (Rec. Doc. 1) at ¶ 1.

service to customers damaged WebApps by harming its business reputation.

Based on the foregoing, Plaintiff asserts claims against Defendants pursuant to: (1) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq.; (2) the Stored Communications Act (SCA), 18 U.S.C. § 2701(a), et seq.; (3) the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431, et seq., or the equivalent of any other state's law found applicable; (4) the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq., or the equivalent of any other state's law found applicable; (5) Louisiana Civil Code article 2315 or the equivalent of any other state's law found applicable; (6) breach of contract; and (7) intentional interference with contract and intentional interference with business relations. Plaintiff seeks relief in the form of monetary damages, including punitive damages, injunctive relief, and an award of attorney's fees and costs.

In addition to denying Plaintiff's allegations of wrongdoing, Defendants have filed counterclaims against Plaintiff. Defendant Cake Marketing has filed counterclaims asserting (1) intentional interference with contract; (2) unfair competition under California Business & Professions Code Section 17200, et seq.; (3) declaratory judgment regarding the legal rights and duties of Plaintiff and Cake Marketing when Cake Marketing is chosen to retrieve a departing customer's data; (4) unfair trade practices under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401; and (5) intentional interference with business relations.

Defendant PAB67, L.L.C. has filed counterclaims asserting: (1) tortious/intentional interference with contract; (2) violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401; (3) declaratory judgment; (4) tortious/intentional interference with business relations; (5) breach of the Licensing Agreement; (6) violations of the Virginia Consumer Protection Act; (7) theft of intellectual property rights/dilution of intellectual

property/trademark infringement; and (8) defamation.  Defendant Moore International, L.L.C.'s counterclaims mirror PAB67's except that Moore International asserts violations of the Texas Deceptive Trade Practices Act, rather than under Virginia law.

The motions presently before the Court seek dismissal, pursuant to Federal Rule 12(b)(2) and (6), of certain of Plaintiff's claims and Defendants' counterclaims.   The Court rules on the motions as stated herein.

### Law and Analysis

## I. Rule 12(b)(6) Motion to Dismiss Filed by Defendant Cake Marketing (Rec. Doc. 24)

As discussed in *Bishop v. Shell Oil Co.*, No. 07-2832, 2008 WL 2079944, *1-2 (E.D. La. 5/16/08) (Engelhardt, J.), Rule 8 of the Federal Rules of Civil Procedure requires that the complaint provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S. Ct. 992, 998 (2002) (internal citations omitted); *see also Christopher v. Harbury*, 536 U.S. 403, 416, 122 S. Ct. 2179, 2187 (2002) (the elements of the plaintiff's claim(s) "must be addressed by allegations in the complaint sufficient to give fair notice to a defendant"). Although a complaint does not need "detailed factual allegations, . . . more than labels and conclusions are necessary, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal citations and quotations omitted); *see also Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Thus, "the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007)

4

*(quoting Twombly,* 550 U.S. at 570)).[3]  The degree of required specificity, however, depends on context, *i.e.*, the type of claim at issue.  *Robbins v. Oklahom*a, 519 F.3d 1242, 1247 (10th Cir. 2008).

In evaluating motions to dismiss filed under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279 (1986).  If sufficient notice of the basis of the plaintiff's claim is provided, "dismissal will not be affirmed if the allegations [made] support relief on any possible theory" of recovery. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999) (internal citations omitted). Moreover, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001).  Finally, to the extent that the complaint's allegations are simply vague or ambiguous, a motion for more definite statement, pursuant to Rule 12(e), is appropriate.  *Swierkiewicz,* 534 U.S. at 514, 122 S. Ct. 998.

In its motion, Cake Marketing seeks dismissal of Counts 1, 2, 4, 5, and 7 of Plaintiff's complaint.  Applying the foregoing principles to Cake Marketing's motion, the motion is granted in part and denied in part.  The motion is granted to the extent that, within fifteen (15) days from the entry of this Order and Reasons, Plaintiff must submit an amending and superseding complaint that includes all of the allegations from the original complaint on which Plaintiff continues to rely, as well as all necessary amendments discussed herein.

---

[3]    The Tenth Circuit Court of Appeals has described *Twombly* as "seek[ing] to find a middle ground between 'heightened fact pleading,' which is expressly rejected [relative to Rule 8] . . . and allowing complaints that are not more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'" *Robbins v. Oklahom*a, 519 F.3d 1242, 1247 (10th Cir. 2008).

A.      Computer Fraud and Abuse Act ("CFAA") (Count 1)

Regarding Plaintiff's claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, et seq. ("CFAA") (Count 1), Cake Marketing contends that Plaintiff must aver that it suffered at least $5,000 in damages resulting from an "interruption of service" of its computer systems that was caused by Cake Marketing's allegedly unauthorized access of that system.  *See* 18 U.S.C. §1030(c)(4)(A)(i)(I).  According to Cake Marketing, Plaintiff has nowhere claimed in its complaint that the harm to its business reputation, in particular, allegedly caused by Cake Marketing, resulted in a loss of any customers or otherwise caused it any cognizable harm.  Considering the assertions made in Plaintiff's opposition memorandum, however, it appears that Plaintiff should be able to amend its complaint to clarify that it allegedly did suffer damages of the sort and amount necessary to satisfy the $5,000 damage threshold without running afoul of Rule 11 of the Federal Rules of Civil Procedure.  If the contrary is true, Plaintiff shall promptly seek to dismiss this claim.

B.      Stored Communications Act Claim  ("SCA") (Count 2)

Similarly, with respect to Plaintiff's claim asserted pursuant to the Stored Communications Act (SCA), 18 U.S.C. § 2701(a), et seq. (Count 2), Cake Marketing argues, in its reply memorandum:  "Plaintiff implicitly concedes that it failed to plead the elements of a SCA claim when it purports to cite in its Opposition to allegations that are entirely missing from its Complaint."[4]  In making this assertion, Cake Management points to the following statement from Plaintiff's opposition memorandum: "WebApps . . . alleged that the website serves as a means through which it communicates data to its customers . . . and a means through which the network

---

[4]          *See* Rec. Doc. 49, at p. 3.

6

operators communicate data to their customers."[5] Cake Marketing additionally contends that the statutory exception in § 2701(c)(2) applies here and, thus, precludes Plaintiff's claim.

In terms of pleading statutory elements, the very language that Cake Marketing quotes from Plaintiff's opposition memorandum reveals that Plaintiff should be able to cure by amendment any deficiency in its complaint concerning the general applicability of § 2701(a).[6] Additionally, moreover, § 2701(c)(2) excepts from liability only conduct by a "user of that service with respect to a communication of or intended for that user."  Significantly, a "user" is defined as "any person or entity who uses an electronic communication service and is *duly authorized by the provider* of such service to engage in that use."  *See* 18 U.S.C. §§ 2711(1) and 2510(13) (emphasis added).

Regarding Cake Marketing's purported status as a "user" for purposes of § 2701(c)(2), Plaintiff WebApps, in its opposition memorandum asserts:

> [E]ven if the statutory exemption could potentially apply in this case, it would be premature to make any determination regarding its application at this early stage of the proceedings for at least two reasons.  First, WebApps has alleged that the licensees in this case were contractually prohibited from disclosing their passwords or otherwise providing access to the WebApps system to third parties. As such, the licensees were not authorized users to the extent that they were providing passwords and site access to Cake Marketing. Second, WebApps suspects that the licensees will at the end of the day attempt to mitigate their culpability by arguing that Cake Marketing greatly exceeded the scope of any authority they granted to Cake Marketing to access the system. These are factual questions

---

[5]    *See* Rec. Doc. 49, at p. 3 (comparing Plaintiff's Memorandum in Opposition ("Opp.") at 6 and Complaint at ¶14).

[6]    If the contrary is true, Plaintiff shall promptly seek to dismiss this claim.  Otherwise Plaintiff must so amend its claim.

which can be answered only through discovery.[7]

On the showing made, the Court presently is not persuaded that Plaintiff is legally incorrect relative to its ability to contractually define and limit the scope of access authority granted to its licensees pursuant to licensing agreements.  *Cf. State Analysis, Inc. v. American Financial Services Assoc.,* 621 F. Supp. 2d 309, 318 (E.D. Va. 2009) ("[Defendant] KSE has cited no authority that supports the principle that a third party who intentionally accesses a system after being given a password by an authorized user cannot be liable" under the SCA).  Thus, at this time, the Court declines to dismiss Plaintiff's SCA claim in Count 2 based on the "user" exemption from liability established in § 2701(c)(2) of that statute.

     C.    <u>Trade Secret Preemption (Counts 4, 5, 7 and Prayer)</u>

In seeking dismissal of the claims set forth in Counts 4, 5, and 7 of Plaintiff's complaint, as well as the request for punitive damages in paragraph 2 of the Prayer, Cake Marketing argues that Plaintiff's claim in Count 3, alleging misappropriation of trade secrets, preempts the other claims, which seek relief under unfair trade practices law and general tort law.  To support this contention, Cake Marketing cites to the preemptive provisions of California's and Louisiana's trade secret statutes while additionally urging that California law governs under applicable choice of law principles.[8]

_____

    [7]    *See* Plaintiff's Opp. at p. 8.  Plaintiff's complaint adequately alleges access restrictions and prohibitions included in its licensing agreements.  *See* Plaintiff's Complaint at ¶¶ 14-22 and 30-31.

    [8]    Although Cake Marketing argues that California law applies, it also maintains that the Louisiana trade secrets statute commands the same result.

Even if California's trade secrets law is controlling here, which the Court does not presently decide, dismissal of the entirety of Plaintiff's claims in Counts 4, 5, and 7 against Cake Marketing is not warranted at this stage of the proceedings. In short, viewing the allegations of the complaint in the light most favorable to Plaintiff, as required with Rule 12(b)(6) motions, these claims survive because they allege more than improper acquisition of trade secrets. For instance, Plaintiff alleges that Cake Marketing accessed its secure website without authority, wrongly utilized computer programs that delayed and disrupted authorized users' access to Plaintiff's website, and made false representations to customers and potential customers regarding the functionality of Cake Marketing's software as compared to Plaintiff's. And, with respect to its request for punitive damages in paragraph 2 of its complaint, Plaintiff's opposition memorandum clarifies that the request is made pursuant to the SCA, not state law.[9] Accordingly, the Court declines to dismiss any of Plaintiff's claims against Cake Marketing on grounds of trade secret preemption at this juncture. That being said, however, the Court orders Plaintiff to amend the referenced portions of its complaint to clarify the various acts of misconduct at issue and the claim as to which Plaintiff prays for punitive damages.

Should the question of trade secret preemption again arise later in this proceeding, perhaps in connection with a motion for summary judgment, the parties' analyses are to include a thorough discussion of the import of *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.,* 220 F.3d 396, 405 (5th Cir. 2000), wherein the Fifth Circuit stated: "We find that the remedies provided by Louisiana's unfair trade secrets statute and those provided in its uniform trade practices act do not conflict, but merely provide parallel remedies for similar conduct. Therefore, Louisiana's

---

[9]     *See* Opp. Mem. (Rec. Doc. 37) at p. 14.

Uniform Trade Secrets Act does not pre-empt CMAC's unfair trade practice's claim against IMC."[10] Also, regarding choice of law, in addition to thoroughly analyzing the effect, if any, of Louisiana Civil Code article 3543, the parties are also to address whether the availability of multiple statutory remedies for the same conduct would instead be determined by Louisiana Civil Code article 3544.[11] Finally, any further treatment of this issue by Cake Marketing is also to include an explanation of why the unfair trade practices claim premised on trade secret misappropriation and deception, asserted by it in paragraph 39 of its counterclaim and discussed in its memorandum in opposition to Plaintiff's motion to dismiss its counterclaim, is not preempted by the California trade secrets law.[12]

   D.   Tortious Conduct and Tortious Interference (Counts 4, 5 and 7)

        In addition to arguing trade secret preemption, Cake Marketing urges that Plaintiff has failed to state a viable claim, in Count Five, for "tortious conduct" under Louisiana Civil Code article 2315 and, in Count Seven, for intentional interference with contract and intentional interference with business relations.  In its opposition, Plaintiff clarifies that it is not asserting a

---

[10]   Contrary to Cake Marketing's suggestion on page 10 of its reply memorandum (Rec. Doc. 49),  the Fifth Circuit's analysis in *Computer Management* of the preemptive effect of the Louisiana trade secrets statute relative to the Louisiana unfair trade practices statute, though far from extensive, is not solely limited to a "cursory footnote."  Although the Court of Appeals cites a number of cases in footnote 14 of the opinion, the quoted language set forth above, as well as the preemptive language from the trade secrets statute, are included in the main text.

[11]   The comments to these code articles explain that Article 3543 applies to "issues pertaining to standards of conduct and safety" whereas Article 3544 governs "issues of loss distribution and financial protection."  *See* La. Civ. Code art. 3543, Comment (a); art. 3544, Comment (a).

[12]   *See* Cake Marketing's memorandum in opposition to Plaintiff's motion to dismiss its counterclaim (Rec. Doc. 62) at page 3 (explaining that Cake Marketing's unfair trade practices claims are premised on trade secret misappropriation and deception, not monopolization).

claim for intentional interference with contract against Cake Marketing under Louisiana law, but desires to reserve its ability to pursue that claim to the extent that the law of another state is found to apply and would permit such a claim to be maintained against Cake Marketing.

Considering the parties' submissions and the allegations of Plaintiff's complaint, the Court will not presently dismiss *with prejudice* any of these claims as to Cake Marketing except to the extent that Plaintiff has conceded that to be appropriate with respect to a claim against Cake Marketing for intentional interference with contract under Louisiana law (Count 7). Otherwise, the Court dismisses the claims in Count 5 and Count 7 without prejudice to Plaintiff's right to amend its complaint to cure certain pleading deficiencies.

Specifically, with respect to Count 5 and Louisiana Code article 2315, the Court finds that, considering the claims asserted in other counts of the complaint, the general reference in paragraph 36 to "[t]he conduct described above" is overly unclear. Accordingly, if Plaintiff desires to pursue this claim against Cake Marketing, it must amend its complaint so as to sufficiently clarify the bases and parameters of the claim, including the particularity required by Rule 9 of the Federal Rules of Civil Procedure for allegations of fraud.

Regarding the intentional interference with business relations claim referenced in Count 7, Cake Marketing contends that Plaintiff has not adequately alleged "malice" – a required element. In response, Plaintiff's opposition points to allegations of "bad faith," which Plaintiff contends encompass the "spite or ill will" cited by Cake Marketing. On the showing made, the Court finds Cake Marketing to have the better argument in that the Court is not convinced that "bad faith" necessarily *always* contemplates "malice" or "spite or ill will." Thus, to the extent that Plaintiff desires to pursue this claim, it must amend its complaint to expressly include assertions of

11

"malice" or "spite or ill will," and, at least generally, identify the conduct that, upon knowledge, information, and belief, allegedly is supportive of such a finding.

## II.   Motion to Dismiss Filed Pursuant to Rules 12(b)(2) and (6) by Defendants Chris Kautz-Scanavy, Ryan Moore, Moore International, L.L.C., and PAB67 Media, L.L.C. (Rec. Doc. 26)

With their motion to dismiss, Defendants Moore International, L.L.C. ("Moore International") and PAB67 Media, L.L.C. ("PAB67") (together, the "Customer Defendants"), and Ryan Moore and Chris Kautz-Scanavy  (together, the "Individual Defendants") seek dismissal of all of Plaintiff's claims against the Individual Defendants and dismissal of Plaintiff's counts 1, 2, 4, 5, 7 and 8 against both Individual Defendants and Customer Defendants.  These defendants contend that the allegations in Plaintiff's complaint lack sufficient  facts to establish a  personal jurisdiction over the Individual Defendants and, notwithstanding a lack of jurisdiction, that Plaintiff similarly fails to state a claim against them.  They additionally maintain, as did Cake Marketing, that Plaintiff ignored the pleading requirements for several of its claims and disregarded the preemptive effect of its trade secrets claim on its alternative tort claims.

Focusing first on the Individual Defendants, the Court agrees with their position essentially for the reasons stated in their supporting memoranda (Rec. Docs. 26-2 and 50).  In short, Plaintiff's assertions regarding the Court's personal jurisdiction over them, and their alleged personal liability, are predicated upon application of the "fraud" and "personal duty" exceptions to the general rule that officers or directors of a corporation are shielded from jurisdiction and liability for acts taken in their corporate capacities.  As stated on page 9 of movants' original memorandum (Rec. Doc.  26-2), however, all of Plaintiff's allegations against the Individual Defendants are grounded in the alleged breach of Plaintiff's licensing agreements (with the Customer Defendants)

by virtue of their disclosure of log-in credentials for the WebApps software to Cake Marketing, and the assertion that the Individual Defendants "aided and assisted" Cake Marketing. Significantly, other than the alleged disclosure of login information, Plaintiff makes no other factual allegations of wrongdoing by the Individual Defendants. Rather, the focus of the complaint is on Cake Marketing's conduct and intentions. Such limited allegations are not adequate to establish this Court's personal jurisdiction over these individuals and to impose personal liability on them relative to actions taken on behalf of the Customer Defendants.

As referenced with Cake Management's motion to dismiss, Rule 9 requires that fraud be alleged with particularity. Here, Plaintiff's complaint provides no factual basis on which a finding of fraud or other unfair or deceptive practices by any defendant other than Cake Marketing can rest. Although the Court can speculate as to various motivations that Plaintiff may believe to be fairly attributed to the Individual Defendants, such speculation is impermissible. Rather, a plaintiff is obligated to plead sufficient facts, not conclusions or labels, to state a legally sufficient that is plausible on its face. Additionally, for purposes of Plaintiff's intentional interference with contract claim, Plaintiff has alleged no facts addressed to the "absence of justification" element of that claim, *i.e.*, that the officer's acts were outside the scope of his authority or adverse to the company's interest. Accordingly, given the foregoing, all of Plaintiff's claims against the Individual Defendants are dismissed without prejudice to Plaintiff's right timely and adequately amend them to cure these deficiencies, if possible.

Turning to the Customer Defendants, and Counts 1, 2, 4, 5, and 7 of the complaint, the Court's rulings regarding Cake Marketing's motion to dismiss likewise apply to them and their motion. Lastly, with respect to Count 8, concerning Plaintiff's reservation of the right to seek

13

injunctive relief from this Court, that aspect of the motion is denied without prejudice.  On the showing made, the Court is not convinced that these defendants lack sufficient notice of the basis for this count, or that such relief is not available in this instance as a matter of law.  This ruling is without prejudice, however, to Defendant's right to later contest the merits of any request for injunctive relief by means of further motion practice.

III.   **WebApps' Motion to Dismiss Cake Marketing's Counterclaim (Rec. Doc. 54)**

With its motion (Rec. Doc. 54), Plaintiff seeks dismissal under Rule 12(b)(6) of Cake Marketing's counterclaims. Specifically, Plaintiff argues that alleged anti-competitive behavior is not actionable, whether labeled as antitrust violations, unfair trade practices, or other business torts, if it does not constitute an unreasonable restraint under the antitrust laws.  In making this argument, Plaintiff  focuses on allegations that (1) Plaintiff has made it difficult for customers to switch products by structuring "its customer web portal to make it bewildering, expensive, and time consuming for a departing customer to retrieve all of the data that the customer owns" and (2) it "knowingly made false representations to its customers in an email message from its CEO on or around March 29, 2011 to the effect that 'one of its competitors has been unlawfully accessing the Network Admin Panel User Interface of its HitPath Software ('HitPath') for the purpose of misappropriating trade secrets and other valuable confidential and proprietary information.'" Plaintiff additionally argues that Cake Marketing has not alleged any facts sufficient to support a finding that Plaintiff's alleged anti-competitive conduct injured competition.

With respect to Cake Marketing's claim for intentional interference with a contract, Plaintiff points out that Louisiana law limits such claims to alleged interference by an officer of the breaching company, and reasons that Cake Marketing does not and cannot allege that Plaintiff is an

14

officer of any company with which it has a contract.  And in terms of California law, Plaintiff maintains that California law has long recognized a "competition privilege" applicable to claims for interference with prospective economic advantage and to existing contracts that are terminable at will.  Specifically, Plaintiff argues that,  to defeat the privilege, the conduct at issue must be unlawful or illegitimate such that it violates a statute or constitutes a tort such as fraud or unfair competition.  Plaintiff contends that Cake Marketing has not overcome this privilege because it has not  alleged any conduct that constitutes a restraint of trade or is otherwise actionable as an unfair trade practice.  Additionally, for purposes of California law, Plaintiff asserts that Cake Marketing cannot prevail because the alleged conduct causing the purported disruption occurred before Cake Marketing had a valid contract with any of its customers.

Finally, because Case Marketing's declaratory judgment counterclaim allegedly shares a complete identity of factual and legal issues with the Plaintiff's own claims, and would not provide Cake Marketing with any additional relief, Plaintiff contends that "[d]ecisions from the modern era 'agree that mirror image counterclaims are improper' and should be dismissed." *Pettrey v. Enterprise Title Agency, Inc*., 2006 WL 3342633, *2 (N.D. Ohio Nov. 17, 2006) (collecting cases).  Plaintiff urges that under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the Court has complete discretion whether to hear a counterclaim for declaratory judgment.

Having carefully reviewed Plaintiff's motion and supporting memorandum, Cake Marketing's opposition to Plaintiff's motions, and Plaintiff's subsequent reply memorandum, the Court declines, at this juncture of the proceeding, to re-cast or dismiss any of Cake Marketing's counterclaims, except with respect to any Cake Marketing counterclaim of tortious interference with

contract under Louisiana law.[13]   As Plaintiff states, and Cake Marketing has not disagreed, Cake Marketing does not and cannot allege that Plaintiff is an officer of any company with which it has a contract.  Accordingly, that claim is dismissed with prejudice.

IV.   **WebApps' Motion to Dismiss Moore International, L.L.C.'s and PAB67 Media L.L.C.'s Counterclaims (Rec. Doc. 55)**

          In its second motion to dismiss, Plaintiff incorporates by reference the arguments it made against Cake Marketing with respect to the counterclaims urged by Defendants  Moore International, L.L.C., and PAB67 Media L.L.C. ("Customer Defendants"), while also urging separate grounds for dismissal of the Customer Defendants' counterclaims urging breach of contract (Count 5), "theft of intellectual property rights/dilution of intellectual property/trademark infringement" (Count 7), and defamation (Count 8).  Specifically, Plaintiff argues that, in Count 5, the Customer Defendants assert a breach of contract claim without alleging an actual breach and without alleging any damages resulting from the alleged breach.  That is, Plaintiff maintains that the Customer Defendants have not identified a single term in the agreement between the parties in which Plaintiff obligated itself to assist the Customer Defendants in transfer their data.  Nor do they allege that Plaintiff failed "to provide customer support to resolve issues resulting from the normal use of the HitPath platform," or that the HitPath Platform was not available for use 99.999% of the time in any given billing period.  According to Plaintiff, the Customer Defendants also do not allege that Plaintiff has used, reproduced, publicly or digitally displayed or broadcasted any logos, trademarks, slogans, or other intellectual property belonging to the Customer Defendants.  Rather, Plaintiff argues, the Customer Defendants allege only that Plaintiff  "provided defective APIs and inferior

---

          [13]     This ruling does not, of course, preclude a later dismissal of claims or counterclaims pursuant to a properly supported motion for summary judgment.

service support during the [Customer Defendants'] transition of [their] data to Cake Marketing."

        Similarly, Plaintiff argues that, in Count 7, the Customer Defendants assert a "theft of intellectual property rights/dilution of intellectual property/trademark infringement" claim without disclosing what intellectual property has been misappropriated, or alleging that Plaintiff is using, reproducing, displaying, or disseminating its name, trademarks, logos, or other intellectual property.  In making this argument, Plaintiff points to the allegation that "[o]n information and belief, Plaintiff has retained some, if not all, of Moore International's proprietary intellectual property and information, including URLs, logos, trademarks, trade names, service marks, customer lists, etc."  Missing from the counterclaims, Plaintiff contends, are: (1) any description of the specific URLs, logos, trademarks, trade names, service marks, or other intellectual property that has allegedly been retained by Plaintiff;  (2) any facts to suggest that the unidentified intellectual property actually qualifies for trade secret, copyright, or trademark protection under federal or state law; and (3) any facts to suggest that Plaintiff is using, reproducing, displaying, or disseminating the unidentified intellectual property or that the Customer Defendants have lost customers or sales or suffered any other injury as a result of Plaintiff's alleged conduct.

        Finally, in Count 8, Plaintiff asserts that  the Customer Defendants allege that Plaintiff has defamed them without alleging any facts to support the elements of a defamation claim, *i.e.* when the challenged statements were made, how they were published, the identity of the third parties to which they were published, and malice.  According to Plaintiff, the defamation claim also is doomed because Louisiana courts have consistently held that an action for defamation arising out of allegations in a lawsuit cannot be brought until the underlying proceedings have been terminated.

17

Having reviewed the supporting and opposing memoranda, the Court grants Plaintiff's motion to dismiss only in two limited respects.  First, the motion is granted to the extent that the Customer Defendants' defamation claims, based on allegations made in the context of this ongoing legal proceeding, are dismissed without prejudice as presently being premature.  Second, the Court will require the Customer Defendants to amend their counterclaims relative to the damages – lost profits, damage to reputation, business valuation, and goodwill –  that they allegedly have suffered as a result of Plaintiff's acts and omissions.  As presently plead, Customer Defendants' damage allegations are insufficiently clear to provide the Court and Plaintiff with fair notice of the basis of their claims.  Otherwise, the motion to dismiss is denied. Plaintiff can seek to obtain additional information regarding the counterclaims in discovery, and/or more appropriately contest the merits of the Customer Defendants' counterclaims through summary judgment motion practice.

## Conclusion

As stated herein, **IT IS ORDERED** that the motions to dismiss presently before the Court are **GRANTED IN PART** and **DENIED IN PART**.  Any amendments ordered by the Court are to be made, in accordance with the Court's instructions herein, no later than fifteen (15) days following entry of this Order and Reasons.

New Orleans, Louisiana, this 20th day of March 2012.

**KURT D. ENGELHARDT**
**United States District Judge**

18